SINESIO CORDERO, Plaintiff and Appellee, *v.* DEMETRIO RIVERA ET AL., Defendants and Appellants.

No. 10357. Argued March 1, 1951.—Decided April 14, 1953.

*L. Santiago Carmona* for appellant.  *Gustavo Jiménez Sicardó* for appellee.

MR. JUSTICE NEGRÓN FERNÁNDEZ delivered the opinion of the Court.

The present suit involves two causes of action. The first one arises out of an execution of deed, and alleges that prior to November 4, 1929 plaintiff bought from defendants, by verbal contract, and for the amount of $800, a farm of 18.60 cuerdas in Palmarito ward of the municipality of Corozal, paying the aforesaid amount immediately, having the vendors informed him, upon receiving said amount, that defendant Demetrio Rivera bound himself to execute "the corresponding and proper deed of sale," of the aforesaid farm in order that plaintiff could record his title in the Registry of Property; that until 1937 plaintiff paid all the taxes on the property object of the suit without defendants having executed, up to the time the complaint was filed, March 12, 1947,

any deed in favor of plaintiff; that on November 30, 1943, defendant Demetrio Rivera sent to plaintiff a draft of a deed of sale for 10.60 cuerdas and not for 18.60 which plaintiff refused to accept, that even though plaintiff uses and enjoys the 10.60 cuerdas of the farm which he bought from the defendants, defendant Demetrio Rivera not only refuses to perform the sales contract by executing the corresponding deed, but he also unlawfully and arbitrarily uses and enjoys without a title therefor and prior to the year 1937, 8 cuerdas of the 18.60 cuerdas acquired by plaintiff.

As a second cause of action, in which damages are claimed, it is alleged that defendant Demetrio Rivera, "by way of false and fraudulent contrivances," requested and obtained from the Treasury Department that the tax receipts, which had been previously issued in favor of and in the name of plaintiff for the entire 18.60 cuerdas acquired by him be altered issuing instead a receipt in his name for only 10.60 cuerdas, all this against the will of and over plaintiff's objection; that besides having used and enjoyed for over 10 years the 8 cuerdas which he appropriated to himself, Demetrio has not delivered to him the fruits yielded nor the value thereof, and that due to the fact that he has not executed the deed for the 18.60 cuerdas, plaintiff was prevented from selling said property and from obtaining loans for crop advances. He claimed damages in the amount of $7,000 plus costs and $700 for attorney's fees.

Besides setting up as special defense that the complaint did not state a cause of action and that, at any rate, it had prescribed, defendants denied the essential averments of the complaint, alleging on the contrary, in brief, that Demetrio Rivera never sold to plaintiff the 18.60 cuerdas of land; that he purchased from said plaintiff eight cuerdas, paying the price thereof, $150; that the 18.60–cuerda farm in litigation was owned by defendant Demetrio Rivera, but that he sold it to Manuel Rivera, the other codefendant, the latter being the one who sold it to plaintiff Sinesio Cordero, who in

turn, subsequently, sold to defendant Demetrio Rivera eight cuerdas of said farm; that said farm not being recorded in the Registry of Property, plaintiff agreed with Demetrio Rivera in that the latter would seek a dominion title proceeding for the entire property and after its registration in his favor, Demetrio would execute a deed in favor of plaintiff Cordero for 10.60 cuerdas, the material possession of which said plaintiff had been enjoying prior to 1929; that said plaintiff did not accept the aforesaid deed of sale for the 10.60 cuerdas; that plaintiff Cordero bound himself to pay to defendant Demetrio Rivera the amount of $125 as his share in the expenses incurred in seeking the dominion title proceeding agreed upon and that he consented that the 18.60–cuerda property be divided, receiving his portion of 10.60 cuerdas, on which portion only he pays taxes.

Demetrio Rivera filed a counterclaim alleging that Cordero owed him the amount of $125 which the latter had bound himself to pay him once Rivera sought the dominion title proceeding; that because of plaintiff's action by virtue of the facts set forth in the answer to the complaint, the cross-claimant, Demetrio Rivera, has incurred in different expenses amounting to more than $400.

The cross-defendant denied the averments of the counterclaim.

After a trial on the merits, the trial judge sustained the complaint, ordering defendant Demetrio Rivera and his wife to execute a deed of sale of the property of 18.60 cuerdas object of the suit for the amount of $700 in favor of plaintiff Sinesio Cordero; dismissing the second cause of action for failure to prove the damages alleged, and sustaining at the same time the counterclaim, ordering plaintiff to pay the amount of $250.

On appeal, defendant Demetrio Rivera contends in his brief: (1) That there is no cause of action; (2) that if there is one the same is barred; (3) that the court weighed the evidence erroneously and that the trial court acted with

passion, prejudice and partiality; (4) that the trial judge erred in entertaining the present suit, after he had disqualified himself when the transfer of the case was requested under the allegation that an impartial trial could not be obtained; and (5) that the judgment is incongruous inasmuch as the trial judge rendered a judgment in "revendication and another for collection of money, it being a case of specific performance."

■ Appellant argues in his first two assignments that since the complaint alleges that the sale contract was verbal, without it having been formulated in a public deed as required by § 1232 of the Civil Code,[1] 1930 ed., the action on execution of a deed exercised herein does not lie, at law; and that, at any rate, the same is barred by limitation.

We do not agree. As to the first assignment, it suffices to say that whether the action exercised herein is considered, according to the complaint, as one directed to compel the execution of a deed as a formality required by § 1232 of the Civil Code, in order to make binding the sale contract which was alleged to have been perfected, *Berríos* v. *Dávila*, 28 P.R.R. 769; 8 Manresa (Vol. 2) *Comentarios al Código Civil*, 5th ed., pp. 479, 486, —in which case § 1231 of the Civil Code[2] would be in order—or whether the action is considered, as shown by the evidence, as one directed to compel the execution of a deed arising out of a new contract, the action lies at law.

■■ As to the second assignment, since it is a personal action for which no special term of prescription is fixed, it

---

[1] Said Section, insofar as pertinent, provides:

"The following must appear in a public instrument:

"1.—Acts and contracts the object of which is the creation, conveyance, modification, or extinction of rights on real property."

[2] Section 1231 provides:

"Should the law require the execution of an instrument or other special formality in order to make the obligations of a contract binding, the contracting parties may compel each other to comply with said formalities from the moment in which consent and the other requirements, necessary for their validity, have taken place."

is governed by the 15-year period established by § 1864 of the Civil Code. *Calderón* v. *Registrar*, 46 P.R.R. 752; *Berríos* v. *Dávila, supra.* And although from the face of the complaint it appears that the action is barred—because it is alleged that the verbal contract was executed in 1929 and the action was not begun until 1947—it having been shown by the evidence that the defendant bound himself to execute said deed after filing a dominion title proceeding in his name, which would cover the farm of 18.60 cuerdas, without the evidence showing the date in which said proceeding was actually filed it is impossible to determine precisely when the limitation period started to run, for the date when plaintiff could have demanded the fulfilment of the obligation, as was agreed, is not known. Section 1869, Civil Code. And under any circumstance, the evidence shows that plaintiff took extrajudicial steps which pursuant to § 1873 of the Civil Code had the effect of interrupting the prescription of the action. Under said conditions we have to conclude that the action had not prescribed when it was instituted.

The third assignment, to the effect that the trial judge weighed the evidence erroneously "and acted with passion, prejudice and partiality" requires first a detailed summary and then a thorough analysis of the evidence introduced at the trial.

### Evidence for the Plaintiff

Plaintiff's evidence includes, besides his own testimony those of codefendants Manuel (Nelito) Rivera and Demetrio Rivera and of Petra Cordero, Leopoldo Santiago Carmona and Felipe Cordero.

*Manuel (Nelito) Rivera* testified, in brief, that he knows plaintiff Sinesio Cordero "since he was a kid." He had a business deal with him, he does not remember the date, "whether it was in 1924 or 1925" . . . "That deal consisted in that I bought from Mr. Demetrio Rivera eighteen cuerdas of land" . . . "I do not remember well whether it was for

$750 or for $800" . . . "For some months I had it for sale *to bargain* with it." He sold said farm, which he bought from Demetrio Rivera, to Sinesio Cordero. He does not remember whether the sale was for $750 or for $800. Demetrio Rivera did not execute a deed when the latter sold it to him nor did he execute a deed in favor of Sinesio Cordero when he sold it to the latter. The agreement was that Demetrio Rivera would execute a deed or "an extrajudicial instrument" directly in favor of Sinesio Cordero. He knows the property well. When he sold it to Sinesio Cordero, the latter came into its possession and occupied the 18 cuerdas. He is sure "because I lived for about a year in his house after I sold it." Now he only enjoys 10 cuerdas and 60 hundredths "because Mr. Cordero sold 8 cuerdas to Demetrio Rivera. I know because they themselves told me: because Mr. Cordero is my *compadre*." He does not know how the transaction was carried out, he was not present. He remembers that it was in 1936 because "I was taken sick in 1937, so it was in 1936 that the sale took place, they told me about it, because the taxes became due, the property was going to be foreclosed and it was going to be awarded to them and then he [Cordero] sold the eight cuerdas to Demetrio Rivera to pay the taxes and to pay a debt." This was told to him by "my *compadre* Sinesio Cordero and my god-son; they are like relatives." He bought from Demetrio Rivera for $650, and profited "an average of 100 dollars." He does not know what the farm paid in taxes because he never had to pay them; "I sold it rapidly." Cordero was married when he purchased the property and when he sold the eight cuerdas to Rivera.

On cross-examination he repeated that plaintiff has now the possession of 10 cuerdas and 60 hundredths; that he originally had eighteen cuerdas of which he sold eight cuerdas to Demetrio Rivera "to pay the taxes and a debt." The eight-cuerda parcel was worth $150. The 10 cuerdas which plaintiff has kept are the best part of the farm.

*Sinesio Cordero*, plaintiff, testified that he bought eighteen cuerdas of land from Manuel Rivera. He paid $700 for them. He did not draw up a deed. We agreed that Demetrio [Rivera] had to draw up the deed for *compay* Nelito [Manuel Rivera] and then we decided that *compay* Nelito, that is to say, that Demetrio should draw up the deed instead of *compay* Nelito." He entered into possession of the eighteen cuerdas. At present he only has ten cuerdas. In explaining this he said "well, the question is that Demetrio says that I sold the 8 cuerdas to him, and I didn't sell him any land, because I have had no business deals with him... I cannot sell. I have not sold. I am married and my wife was not present at the time." He got the money to buy from Manuel Rivera "from another property which I sold. It happened that I had a small farm and I owed Cristobal Berio $200 and then I sold it to pay the $200 to Don Cristóbal; I sold it for $1,400 and then I took $700 and paid Nelito the farm; which I bought for my wife, because afterwards she told me that she wouldn't have it sold." When he bought the farm he devoted it "to plant plantains, yams and minor fruits." The 18 cuerdas were not fenced. He took possession according to the landmarks indicated by Manuel Rivera. Afterwards Demetrio took possession of the eight cuerdas, but he cannot remember when.

On cross-examination, he repeated that he does not remember the day Demetrio retained a part of the property. He testified that it is not true that about the year 1935 Demetrio Rivera went to him with Severo Ortiz and Tomás Rivera to execute a deed of sale for the eight cuerdas.[3] When he was asked if he "remembered that these gentlemen Severo Ortiz, Tomás Rivera and Demetrio Rivera went up the hill

---

[3] In connection with this point the following incident took place:

"Q.—Isn't it true that on the year 1935 these gentlemen Isabelo, I mean Severo Ortiz and Tomás Rivera went with Demetrio Rivera to see you in order to close a deal on the sale of the eight cuerdas?

"Defendants: The witness started assenting, and then he said no.

"The Court: The Judge has been looking at the witness and appa-

by way of the farm and that you went with your wife, your daughter and your son for the purchase of the 8 cuerdas made by Demetrio Rivera" he answered the following: "Not my wife because my wife was not there at the time; she was here in San Juan." When counsel for the defendant insisted in his question he answered: "No. I have made no agreement. He did so with my daughter." Then he stated: "I have not made any agreement; my daughter can not sell, nor can I sell without my wife's consent." When he was asked whether it was true that in 1936 his farm was to be foreclosed at a tax sale, he stated: "Well . . . I owed the taxes; I owed the taxes for the farm. Because they had become due; because my daughter was the one who helped me pay them and she stopped working and could not help me." He does not know whether or not Demetrio Rivera paid the taxes due. When he was asked if it was true that he sold the eight cuerdas to pay $93 for taxes, he answered: "That is not true. I have not sold any land." He was never called by the collector, nor by anybody to make the transfer of the eight cuerdas to Demetrio Rivera.

*Petra Cordero* testified that she is plaintiff's oldest daughter. She knows what happened in connection with the sale of the property. "Mostly I know; I heard of the sale of the farm; I was the one who intervened with everybody in the deal and in connection with the taxes of my father's farm." "It was about eight or nine years ago when we made the deal alleged by Demetrio Rivera." She explained the "deal" as follows:

"Well . . . it so happens . . . I shall explain . . . it so happens that since Nelito Rivera had sold to my father the

---

rently he started assenting and then he changed his expression as meaning no.

"THE COURT:

"Q.—Say listen, isn't true that this men Severo Ortiz and Tomás Rivera went to see you with Demetrio Rivera to buy the eight cuerdas and Demetrio Rivera bought the eight cuerdas from you?

"A.—No."

property without executing any deed . . . I shall explain to the Court . . . The deed was not delivered to my father and he was paying the taxes. After the 'San Felipe' hurricane, the payment of taxes was suspended; at that time the tax did not exceed one hundred dollars . . . and the taxes were suspended around that time. I worked and I helped my father pay the taxes. In those days as the payment of taxes had been suspended, then, well, it was known that my father was no longer paying the taxes. Well . . . A year went by, or several more years, when one day Mr. Demetrio Rivera sent me a paper telling me that the farm was to be taken from my father because he had failed to pay the taxes at the time when they had been suspended, that it was wrong to do so . . .

". . . Then I really did not have the money. And I went to him and asked him for the deed but he told me that he could not give me the deed . . . Then he told me that he could not execute one . . . Then he told me that the taxes had not been paid. Then he came to town; Mr. Demetrio Rivera came to town; and when I was speaking to the collector I realized that the tax debt amounted to $96. I told Mr. Demetrio Rivera that I did not have the money; then he told me 'I have to give you the deed' 'so that you won't lose your work, I will give you four dollars more for your fare and that will make one hundred dollars: $96 to pay the taxes on the farm and $4 for your fare' and so the taxes of my father's farm were paid. It so happens that according to what he says to Mr. Cordero he was to take the receipts to my father but I don't know whether he received them.

"He made all the arrangements with me . . . At no time whatsoever the farm was sold to him; the only thing that happened was that my father did not have the deed; nor did he sell the property because he was married; he was incapable to sell; and at the time he was already doting."

Demetrio Rivera lend him money to pay the taxes "which had not been paid according to him." She promised she would work to pay him. "That was the agreement." About five or six months later she went with her brother Gregorio to take the one hundred dollars to Demetrio and he refused to take them. "Then I threatened that I would take him to court. After that he executed a deed for 10 cuerdas alleging

that father had sold him eight cuerdas . . ·." When she and her brother went to pay the money to Demetrio he was already working the eight cuerdas.

She identified several tax receipts (from the year 1935–36 up to the year 1937–38) as those paid by Demetrio, in which the 18.60 cuerda farm appeared in plaintiff's name for tax purposes.

On cross-examination she repeated that her father took possession of the 18 cuerdas when he bought the farm and that he planted them; that Demetrio did not accept the $100 that she and her brother took him. That was in the year 1936. She testified that at the time "I don't think that he had taken possession of the 8 cuerdas yet." She could not say when the farm was to be auctioned off for tax purposes. When she was asked whether in 1936 Demetrio Rivera had paid the taxes she said the following: "Well . . . he paid the taxes; I don't know, I repeat, whether he gave father the receipts. He said that he would pay the taxes. Then two or three months later I went to pay him the money and he refused to accept it and then some time after that, he took the 8 cuerdas and executed a deed in favor of my father." She knows Severo Ortiz and Tomás Rivera. It is not true that these men went with Demetrio Rivera up to a hill in the farm to take a look at the eight cuerdas which her father was going to sell to Demetrio; or that her brother, Sinesio Cordero and her mother were there. Upon being asked: "Is it true that Severo Ortiz and Tomás Rivera were there with Demetrio, that you four met them there in that place up in hill in the farm and signed a sales contract of the 8 cuerdas?" she answered: "Well... then ... it is not true. Demetrio was the only one who went to make the deal, somewhat further up the houses, but he did not go up the hill either; that was when the matter of the taxes was discussed; that he did not want to execute the deed."

They still owe him $100 since he did not want to take the money. She explains that first they paid taxes for 18 cuerdas

and then for 10 cuerdas 60 hundredths "since my father can't read or write he came to 'the office of the collector' and paid the amount that they told him there."

She identified the tax receipts for the years 1938–39 and 1939–40, issued in the name of her father, for only 10.60 cuerdas.

All the receipts were admitted in evidence.

*Leopoldo Santiago Carmona* testified, in brief: He is a lawyer and notary. He practices his profession in Bayamón. The first time he took part in this case was in connection with a letter which Lic. Manuel Reyes Serrano took to him. Sinesio Cordero never appeared before him to sell to Demetrio Rivera 8 cuerdas of land. He made a draft of a deed in which Demetrio Rivera sold to Sinesio 10 cuerdas 60 hundredths of land. That was on November 30, 1943. Demetrio—with a power of attorney from his wife—went to his office and signed it. Cordero did not accept said deed, alleging that it should be made for 18 cuerdas.

*Demetrio Rivera* testified: In 1936 he bought from Sinesio Cordero 8 cuerdas of land which were a part of the farm that the latter had bought from Nelito Rivera. "Nelito sold him that farm of 18 cuerdas 60 hundredths and it had no document. He spoke with Sinesio Cordero telling him that he had to make an extrajudicial document. Then one day he tells me 'make out an extrajudicial document.'" He paid the taxes of the property in the name of Sinesio Cordero during the years 1936 and 1937. "I paid for the years 1938 and 1939, when the other eight cuerdas had already been segregated." It so happens that we drew up a deed ... a deed which is certified there ... made by a so-called Ramón Díaz, and it came out that there were 18 cuerdas 60 hundredths. Then the record of dominion was made for 18 cuerdas 60 hundredths. The record was made in my name because Demetrio had no deed." The record of dominion was made to include a property of 34 cuerdas having agreed with Sinesio Cordero that he would pay half of the expenses. "All

the property is in my name because a dominion title proceeding of the 34 cuerdas was made in my name and that record included the 18 cuerdas which came out as 18 cuerdas 60 hundredths. As to the expenses don Sinesio did not have the money to pay his share and I paid all the expenses of the proceeding."

The collector informed him in 1936 that Sinesio Cordero's farm was being auctioned off. When he told Sinesio, the latter answered "I shall lose it because I have no money, you pay them, if you want to buy eight cuerdas." "I paid all that Sinesio Cordero owed of the farm, of the 18 cuerdas. I shall explain. In 1936, well, he sold me eight cuerdas in order to pay all the taxes that he owed. He sold me the eight cuerdas before witnesses, before Petra and Flor. Then a piece of land was given to me for the money I paid for the taxes he owed."

Sinesio Cordero and his wife executed an instrument before Ramón Díaz and two other witnesses, by which they sold to Demetrio Rivera the eight cuerdas. He took said document to the Collector's office so that the eight cuerdas would be credited to him. He sold the 18 cuerdas to Nelito Rivera around 1920 and the transaction between Nelito and Sinesio Cordero took place shortly thereafter.

He remembers that Sinesio sold him the eight cuerdas in 1936 because it was in that year that they told him in the collector's office that the taxes had not been paid and that the farm would be auctioned off. The price paid to Sinesio Cordero for the 8 cuerdas was $150. "Fifty of them were to settle a debt which Sinesio had with Jesús Rivera." It is not true that Petra Cordero and her brother went to his house to give him $100. The eight cuerdas are probably worth $200 nowadays, it is a poor land, "it is a slope."

On cross-examination he testified that receipts of the taxes which he paid in the name of Sinesio amount to a little over ninety-three dollars.

*Felipe Cordero* testified that he is Sinesio Cordero's nephew. He knows plaintiff's farm well, "and the adjoining farms also." In 1936 a cuerda was sold at $35 or $40. One cuerda of that land "may produce up to $300 or $400 per year in minor fruits." The eight cuerdas which belonged to Sinesio and which are now Demetrio Rivera's "is rather slope land." All kinds of vegetables may be planted there "beans, corn, sweet potatoes, yams and plantains."

On cross-examination he testified that in 1936 the land was sold at 40 or 45 dollars per cuerda. It might have been sold at $25 "it all depends . . . anyone who had a cuerda and wished to sell it." "There was a time when it was sold at $10 per cuerda."

## Evidence for the Defendants

Defendants' oral evidence consisted of the testimony of codefendant Demetrio Rivera and the testimony of Jesús Rivera, Marcelino Torres, Tomás Rivera and Severo Ortiz.

*Demetrio Rivera,* codefendant, testified that he carried on a business transaction with Sinesio Cordero. He explained it as follows: "Well, I had sold that property to Mr. Nelito Rivera; and he in turn sold it to Mr. Sinesio Cordero by private document, because said property had no deed and the purchaser of the property had to file a dominion title proceeding in the court and it was sold to Mr. Rivera. As soon as Mr. Nelito Rivera sold it to Mr. Cordero, Mr. Cordero took possession thereof. I had to give Mr. Cordero a private document—that was the agreement— but he refused to admit it. He tells me: 'What am I going to do with a private document?' "

Next to the property sold to Sinesio Cordero the witness had a 16–cuerda farm with respect to which a dominion title proceeding had also to be filed. There was an agreement "to consolidate both properties in the dominion title proceeding." In prosecuting said dominion title proceeding he spent, "among one and other things," $250. "The man had

no money and he told me 'I am going to sell you part of the property to pay you' and then he left for Santurce." In 1936 "I sent for him and told him: 'Sinesio, the farm will be lost and your 18 cuerdas are being auctioned off also' and he answered: 'Let it be lost because I have no money to pay the taxes.' I told him: 'It is a pity that you will lose it.' Then he tells me: 'Buy part of it, since I always had in mind to sell you part.' I answered: 'Well I will buy you part of it, let's get down to business.' Then we agreed that the eight cuerdas were worth $150 because he had spent $50 on groceries and were charged to him. The man leaves to bring his wife; and his son and Petra Cordero and I invited Severo Ortiz and Tomás Rivera to Sinesio's farm to see what part he was going to sell me and we agreed in $150 for the eight cuerdas; and then the seven of us left. The boundary line was from a guama to a *tachuelo*. And there he told me: 'That is your part and this is mine'; the most fertile and he took the best part. I took out the notebook; started making computations and told him: 'If you pay these taxes and give Mr. Jesús Rivera the fifty dollars that you owe him, you still have six dollars and some cents left.' And then I gave him the $50 to pay to Mr. Jesús Rivera and I gave him the $5 and cents which were left from the $100 of the taxes."

He further testified that he came into possession of the eight cuerdas and that in 1937 Sinesio's wife came, stayed overnight, "and the document was signed." "I took the document on February 2 to the property assessor and he recorded the eight cuerdas in my name instead of in his. He kept the 10 cuerdas 60 hundredths and I kept my eight cuerdas."

In 1943 the children of Sinesio Cordero went to him and told him "that if I gave them the land they would give me the $150 that they had taken from me." He refused but they insisted that he execute a deed for the 18 cuerdas, which

he also refused to do "because you sold out eight cuerdas; I give you the deed for the 10 cuerdas 60 hundredths at any time you wish."

In 1937 he executed the document and it was in 1943 that they took him the $150 which he rejected. Said document "was drawn up in Rivera's store before Jesús Rivera, Marcelino Torres, Sinesio Cordero and his wife and Ramón Díaz who made the document." The price stated was "one hundred and fifty dollars which don Sinesio had already received." "I brought the document to the collector's office and then the 'Assessor of Puerto Rico' took it; and then he put 10 cuerdas 60 hundredths in Sinesio's name and 8 cuerdas in my name." The witnesses for the document were Juan Morales, Marcelino Torres and Jesús Rivera. "They were witnesses with crosses because they did not know how to sign and so put a cross; Sinesio made it and so did his wife." "I took the document to the assessor and he gave it back to me; and I put it in my pocket and lost it."

On cross-examination: He does not know if he left the document with the assessor or whether he returned it to him. He knew that Sinesio could not sign his name. Jesús Rivera signed for Sinesio and Juan Morales for his wife. The two witnesses worked with him, they are not 'squatters,' they don't live in his farm. The document was drawn at Jesús Rivera's store. Ramón Díaz made it.

*Jesús Rivera* testified that he has a store at Palmarito ward in Corozal. He remembers "That there they executed the *deed of sale* which Sinesio Cordero made in favor of Demetrio Rivera of eight cuerdas of land." Ramón Díaz executed the deed; "Mr. Ramón Díaz, Juan Morales, Marcelino Torres, Sinesio Cordero and his wife: *Malla* which is the name given to her and I as owner of the store were there." "I signed for his wife [Sinesio Cordero's] because she could not sign, and I signed at her instance." Juan Morales signed as witness. "After we signed, she [Cordero's wife] made a cross below the other one's signature and her husband

made another cross; I don't know whether it was Marcelino. Don Juan Morales was the other one who signed." In said document Sinesio Cordero sold the eight cuerdas of land in litigation for $150.

On cross-examination the witness testified that since he came to Palmarito, 14 years ago he has been Demetrio Rivera's partner. They share the profits of the store "half and half." In 1936, date in which the document was made, he was already the partner of Demetrio Rivera. He signed for plaintiff's wife. The only thing he did was write his own name, not hers. "Marcelino Torres, Juan Morales and I" signed the document.

*Marcelino Torres* testified that he was present when the deed of sale of "a piece of land of about eight cuerdas" was executed "to pay some taxes." Sinesio Cordero sold the eight cuerdas to Demetrio Rivera. The witness signed the deed. It was executed on "November 4, 1937 at Jesús Rivera's store." Demetrio Rivera, Sinesio Cordero and his wife, Juan Morales, Ramón Díaz and Marcelino Torres were there. "I signed at the instance of this man [Sinesio Cordero] who told me to sign for him and that he would make a cross." Jesús Rivera signed for his wife. Juan Morales died. He stated that the price was paid "cash." Then he rectified and said: "Mr. Demetrio Rivera paid the taxes and then what he gave him in cash." Demetrio Rivera took the deed with him.

On cross-examination the witness testified that he does not remember the year in which he was born. He was married on September 17, 1927. He has a son a year and a half old and another 12 years old. He does not remember the year in which his son was born. Sometimes he works with Demetrio Rivera "working with the hoe and *machete*." He does not remember when his mother died. It was 26 years ago. His father died 5 years ago, he does not remember, however, the year in which he died. In spite of the difficulty that he has in remembering dates he remembers that the deed

was executed on November 4, 1937. He attributes it to the fact "that there are many things that come to one's mind at a moment's notice. ..." "The date on which the deed was signed is engraved in my mind. Why, I can not explain." He remembers that the deed was executed about 3 in the afternoon, at Jesús Rivera's store. Nobody reminded him—before the trial—the date in which the deed was executed.

*Tomás Rivera* testified that he was present on one occasion when Demetrio Rivera and Sinesio Cordero made a contract in Corozal. Said contract was in connection with "eight cuerdas which Demetrio Rivera bought from Sinesio Cordero." It was made "in my presence and in the presence of his wife; being also present Flor Cordero, his son, Petra, his daughter, Demetrio Rivera and Sinesio Cordero." Severo Ortiz was also present. He explains the contract as follows: "That Sinesio sold eight cuerdas to Demetrio for 150 dollars; that Demetrio gave Sinesio $93 and some cents to pay the taxes; $50 to pay Jesús Rivera; and the rest of the money he gave to Sinesio Cordero." Said contract was made "within the eight-cuerda property, on a high hill, then Mr. Sinesio Cordero marked the boundaries from a guama tree to a *masa* tree; the eight cuerdas were up the hill and he told him 'from here up to the hill are the eight cuerdas' and from where they were standing downward it was his part of the farm." Fifteen days after the contract was made he himself fenced the eight cuerdas.

On cross-examination he testified that he is Demetrio Rivera's brother. He lives in a farm belonging to the latter. He can not state the day when the event took place "because it was such a long time ago." He was not present the day the deed was signed. Demetrio Rivera took the money. "That the 93 dollars and odd cents were to pay the *taxes* that Sinesio owed; he paid $50 to Jesús Rivera, which Sinesio owed him; and the rest he gave to Sinesio Cordero, which were $6 and cents." He delivered the money "in dollar bills

and coins, six dollars and odd cents." It is not true that Demetrio had given the six dollars to Petra, Sinesio Cordero's daughter, some days before in the presence of Tomás Rivera.

*Severo Ortiz* testified that he was present when Sinesio Cordero sold to Demetrio Rivera eight cuerdas of land. "We went to the farm, myself, Demetrio Rivera, Tomás Rivera, Felipe Cordero, Amalia Muñoz and there they made the deal of the eight cuerdas." Sinesio Cordero sold to Demetrio Rivera eight cuerdas of land for $150. "He [Demetrio Rivera] paid the taxes, which are $93 and odd cents, gave Jesús Rivera $50 which Sinesio owed him; and Sinesio Cordero received the rest of the money: six dollars and odd cents." Demetrio Rivera "took possession of the eight cuerdas which began at a guama tree and ended at a *masa* tree."

On cross-examination he testified that he is Demetrio Rivera's brother-in-law. He lives at Demetrio Rivera's farm. He works with him. Demetrio Rivera gave Sinesio Cordero "six dollar bills and some change."

The documentary evidence consisted of a certified copy of tax return No. 1132 issued by the assessor N. Shepard on February 2, 1938 containing the description of the eight-cuerda property submitted by Demetrio Rivera for the year 1938-39, and of the petition of said assessor to the Treasurer for the division of the 18.60 cuerda property into two farms for the years 1938–39, one of 10.60 cuerdas and the other of eight cuerdas; the first in the name of Sinesio and the second in the name of Demetrio. In said document the following is set forth: "Reasons: Ex. Jud. Doc. Nov. 4, 1937. Juan Morales, witness."

In rebuttal plaintiff Cordero denied that he had transacted any business in the year 1936 with Demetrio Rivera in connection with eight cuerdas of land or that he asked defendant for money to send for his wife to sign any deed. He testified that he had insisted with Demetrio so that the latter would execute him a deed for the 18 cuerdas and that he had not

received in 1943 any draft of a deed for 10 cuerdas 60 hundredths from Lic. Santiago Carmona. He could not explain the eleven years' delay to bring suit after Demetrio had taken the eight cuerdas.

With said evidence, the trial judge made the following findings of fact:

"By the evidence introduced, the court deems that it has been satisfactorily shown that around the year 1929 Sinesio Cordero bought from Demetrio Rivera and wife and for seven hundred dollars which he paid, a farm of 18 cuerdas 60 hundredths of land, located at Palmarito Ward of Corozal, which farm is described in the second paragraph of the first cause of action of the complaint. This was a verbal contract.

"It has been also satisfactorily shown that later on Demetrio Rivera lent Sinesio Cordero the amount of one hundred and fifty dollars for certain expenses, including the payment of taxes for the aforesaid farm, having Sinesio Cordero failed to pay said one hundred and fifty dollars to Demetrio Rivera. It has also been satisfactorily shown that there was an agreement between Sinesio Cordero and Demetrio Rivera so that the latter would file a dominion title proceeding for a farm of a larger area in his name wherein the farm of 18 cuerdas 60 hundredths would be included, Sinesio Cordero binding himself to pay the amount of one hundred dollars to Demetrio Rivera as payment for the expenses incurred in filing the aforesaid dominion title proceeding.

"The court understands that because Sinesio Cordero did not pay Demetrio Rivera the one hundred and fifty dollars which the latter lent him, plus the one hundred dollars spent in the dominion title proceeding, Demetrio Rivera has considered himself entitled to keep 8 of the 18 cuerdas 60 hundredths which he sold to said Sinesio Cordero. However, the court actually believes that Demetrio Rivera and his wife sold to Sinesio Cordero the 18 cuerdas 60 hundredths described in the second paragraph of the first cause of action of the complaint for the price of seven hundred dollars, which the purchaser paid to the spouses, and now these vendors, once the dominion title proceeding referred to in this Statement of Facts and Opinion was ap-

proved, refuse to execute the corresponding deed which is recordable in the Registry of Property.

"It has also been proved that Sinesio Cordero owes Demetrio Rivera the amount of two hundred fifty dollars and that Cordero is bound to pay said amount.

"The damages alleged in the complaint have not been proved to the court's satisfaction."

If this were a case of a mere conflict between the evidence of one and the other party, we could repeat here what we have stated in many other cases: that being the trial judge in a better position than this Court to determine the degree of credibility of each witness who testifies before him, we shall not disturb his findings of fact. But in the instant case there are important elements of proof —which can not be dispensed with in weighing the evidence— which, on examination, lead us to the inevitable conclusion that the court *a quo* erred in weighing the evidence. We shall turn to analyze them.

The trial judge reached the conclusion that plaintiff Cordero bought *from Demetrio Rivera* and wife the farm of 18.60 cuerdas in litigation. However, the evidence in both sides definitively established that Cordero bought said property, by way of a verbal contract, from Manuel (Nelito) Rivera, to whom in like manner Demetrio had sold it, and that since the property had not been recorded, Demetrio made an agreement with Nelito and Cordero to seek a dominion title proceeding in his own name on a property of a greater area, which would include the farm of 18.60 cuerdas, in order then to vest title directly on Cordero, the latter paying part of the expenses.

The trial judge reached the conclusion that Demetrio *believed himself entitled* to keep eight of the 18.60 cuerdas belonging to Cordero. However, the uncontroverted evidence shows that Demetrio began to enjoy the eight cuerdas in the year 1937, fencing them and harvesting them from there on, without Cordero attempting to prevent him from doing so,

and that for the taxable year 1938–39 the tax receipts of the 18.60 cuerda farm which until the year 1937–38 had been issued for said area in the name of Sinesio Cordero, were sent to him for a 10.60 cuerda farm —described thus in said receipts— Cordero paying since that time taxes on this parcel only, without doing anything to correct said situation in the office of the collector. From 1938–39 on another receipt was issued for the eight remaining cuerdas in favor of Demetrio. On this particular, the documentary evidence shows that the assessment and collection of the taxes from Cordero for only 10.60 cuerdas, and from Demetrio for eight cuerdas, since the year 1938–39, were made by virtue of an *extrajudicial document* dated November 4, 1937, presented to the assessor N. Shepard on February 2, 1938, as the latter set forth in the return (Form 241 of the Treasurer) which he prepared for said purposes and in which Juan Morales appeared as witness. Even when the extrajudicial document to which the assessor Shepard referred in the aforesaid return, was not introduced in evidence, defendants' evidence accredited (1) its existence; (2) its presentation to the Assessor for the afore-mentioned purposes and (3) the impossibility of producing it in court because it was lost, and the scope of the transaction which said document represented.

Record in the official files of the Treasury Department as to how the division of the 18.60 cuerdas property was carried out in 1938, for tax purposes, upon making reference to the document which served as basis for such action does not justify—in the absence of evidence showing fraud— the conclusion of the trial court that Demetrio took possession of the eight cuerdas because he believed himself entitled to keep them because Cordero had not paid him the $250 which he owed him. Contrariwise, it is an indication—in the absence of proof of fraud—that the division, for tax purposes, was carried out with the consent of the person in whose name the receipts for the entire farm appeared, which indication be-

comes an inescapable inference when it is added to the uncontroverted fact that Cordero paid the taxes, after the year 1938–39, for only 10.60 cuerdas without complaining of said division in doing so. Said record in the files of the Treasury Department buttresses also Demetrio's contention that Cordero sold him the eight cuerdas to prevent the loss of the whole farm for failure to pay the taxes.

The conclusion is therefore inescapable that the court *a quo* erred in weighing the evidence, and consequently, in deciding the case, inasmuch as although Demetrio was bound, since he had agreed to do so, to execute a deed directly to Cordero for the 18.60 cuerdas as soon as he obtained the afore-mentioned dominion record, once he had sold part of that property to Demetrio, the latter's obligation of conveying title on the *entire* farm ceased, since by acquiring part thereof without dispossessing himself of a title which for Cordero's benefit he obtained in the dominion title proceeding and which he retained, his right to the title as well as the title itself on the recently acquired portion consolidated in him. Consequently, Demetrio Rivera is bound to grant in favor of Sinesio Cordero a deed for only 10.60 cuerdas instead of for 18.60 cuerdas; and Sinesio Cordero is bound to pay Demetrio Rivera the amount of one hundred dollars only as expenses in filing the dominion title proceeding.

The third assignment is sustained insofar as it charges an error in weighing the evidence but—to do justice to the trial judge—it must be set aside in that part in which the judge is charged with having acted with "passion, prejudice and partiality." Said imputation is not justified. Far from it, the trial judge acted prudently and was extremely scrupulous. Precisely so, because said attitude which constitutes a desirable standard of judicial attitude in every case, was in this case imperative, because here, as in other cases in which he acted as counsel, he had moved for disqualifica-

tion of the judge, on the ground that he was "a personal irreconciliable enemy" which question had been previously heard and dismissed before a special judge. *Rivera* v. *District Court,* 71 P.R.R. 893.[4]

To weigh the evidence incorrectly as well as to apply the law incorrectly is an error which we are all liable to commit when we are burdened with the difficult task of imparting justice. And every attorney has a perfect right to raise it on appeal in behalf of his client whenever he considers that such an error has been manifestly committed. By doing this he faithfully complies with his professional duty.

To act "with bias, passion and prejudice" in performing his judicial duty, could not be labelled a mere error of the judge: it would be to go knowingly against the dictates of his conscience and it is this sense of duty which makes of the judge a symbol and of the court a temple in the civilized conglomerates. Because of their position in society and their condition as official of the court, attorneys must be cautious in making imputations against a Judge of such a magnitude and scope, and they should only do so when they are convinced, deep in their conscience—clear of all prejudice at the same time—that their accusation is true, and then exact the responsibility which such dereliction of duty entails. In the case at bar, however, we believe that the attorney, although erroneously, believed in good faith in the validity of his complaint.

The judgment will be modified, limiting its effects, (1) as to the complaint, to the execution of a deed for only 10.60 cuerdas; and (2) as to the counterclaim, to the amount of one hundred dollars.

---

[4] The present suit was decided by the trial court prior to our decision in *Rivera* v. *District Court, supra,* in which—notwithstanding the dismissal of the allegations of prejudice made by the same attorney against the same respondent judge—we suggested his disqualification inasmuch as in doing so he "would be aiding in keeping the courts beyond the slightest suspicion of partiality."